**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ELLIS INGRAM,                           )
                                        )
                     Plaintiff,         )
                                        )
          v.                            )          1:17CV135
                                        )
NANCY A. BERRYHILL,                     )
Acting Commissioner of Social           )
Security,                               )
                                        )
                     Defendant.         )


**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

     Plaintiff, Ellis Ingram, brought this action pursuant to the

Social Security Act (the "Act") to obtain judicial review of a

final decision of Defendant, the Acting Commissioner of Social

Security, denying Plaintiff's claim for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket

Entry 2.)  Defendant has filed the certified administrative record

(Docket Entry 8 (cited herein as "Tr. __")), and both parties have

moved for judgment (Docket Entries 11, 13; see also Docket Entry 12

(Plaintiff's Brief), Docket Entry 14 (Defendant's Memorandum)).

For the reasons that follow, the Court should remand this matter

for further administrative proceedings.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of January 1, 2007. (Tr. 239-60.)[1] Upon denial of those applications initially (Tr. 121-34, 159-67) and on reconsideration (Tr. 135-53, 174-83), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 184-89).[2] Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 97-120.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 38-52; Docket Entry 14-1 at 13.)[3] The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 34-35, 344-36, 348-50), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2011.

---

[1] In other application materials, Plaintiff listed his alleged onset date as June 1, 2009. (See Tr. 249, 255.) On June 15, 2015, Plaintiff, through counsel, amended his onset date to June 1, 2009. (See Tr. 339.)

[2] The record contains neither Plaintiff's application for DIB, nor any administrative documents reflecting denial of that application at the initial and reconsideration levels of review.

[3] The ALJ issued a decision on September 15, 2015, which addressed only Plaintiff's SSI claim (Tr. 77-91), but, on September 24, 2015, issued an amended decision reflecting adjudication of both Plaintiff's DIB and SSI claims (Tr. 38-52; Docket Entry 14-1 at 13). The administrative transcript omits the last page of the ALJ's September 24, 2015, decision. (See Tr. 52-53.) Defendant attached a complete copy of that decision, including the missing page, to her Memorandum in Support of the Commissioner's Motion for Judgment on the Pleadings (see Docket Entries 14, 14-1), and "[c]ounsel for both parties have conferred and agree that the attached exhibit is the entire decision" (Docket Entry 14 at 3 n.1).

2.    [Plaintiff] has not engaged in substantial gainful activity since June 1, 2009, the alleged onset date.

3.    [Plaintiff] has the following severe impairments: chronic obstructive pulmonary disease (COPD), obesity, residuals of a right femur fracture, osteoarthritis of the knees, lumbar degenerative disc disease, and depression not otherwise specified.

. . .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    . . . [Plaintiff] has the residual functional capacity to perform less than the full range of unskilled medium work . . . .

[Plaintiff] can stand and walk for 6 hours in an 8-hour workday, he can sit for 6 hours in an 8-hour workday, and he can lift and carry, and push and pull 50 pounds occasionally and 25 pounds frequently. He can frequently climb ramps and stairs and ladders, ropes, and scaffolds. [Plaintiff] must avoid concentrated exposure to respiratory irritants including fumes, odors, gases, du[st], and areas with poor ventilation.  He can frequently balance, kneel, crouch, and crawl.  He has no limitations in his abilities to stoop. [Plaintiff] has no manipulative, visual, or communicative limitations.

Mentally, [Plaintiff] is limited to simple, routine, and repetitive tasks, with frequent, but not continuous, interaction with supervisors, co-workers, and the public.

. . .

6.    [Plaintiff] is capable of performing his past relevant work as a janitor, dishwasher, and creeler. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

> In the alternative, considering [Plaintiff's] age,
> education, work experience, and residual functional
> capacity, there are other jobs that exist in significant
> numbers in the national economy that [Plaintiff] can
> perform.
>
> . . .
>
> 7.  [Plaintiff] has not been under a disability, as
> defined in the [] Act, from June 1, 2009, through the
> date of this decision.

(Tr. 43-52; Docket Entry 14-1 at 13 (bold font and internal

parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits."  Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope

of [the Court's] review of [such a] decision . . . is extremely

limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Even given those limitations, the Court should remand this case for

further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."

Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,

the Court "must uphold the factual findings of the ALJ if they are

supported by substantial evidence and were reached through

application of the correct legal standard."  Hines, 453 F.3d at 561

(internal brackets and quotation marks omitted).  "Substantial

evidence means 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving

a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' <i>i.e.</i>, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."

---

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

<u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475

n.2 (4th Cir. 1999).[5]  A finding adverse to the claimant at any of

several points in the SEP forecloses an award and ends the inquiry.

For example, "[t]he first step determines whether the claimant is

engaged in 'substantial gainful activity.' If the claimant is

working, benefits are denied.  The second step determines if the

claimant is 'severely' disabled.  If not, benefits are denied."

<u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at

each of the first three steps, the "claimant is disabled." <u>Mastro</u>,

270 F.3d at 177.  Alternatively, if a claimant clears steps one and

two, but falters at step three, *i.e.,* "[i]f a claimant's impairment

is not sufficiently severe to equal or exceed a listed impairment,

the ALJ must assess the claimant's residual functional capacity

('RFC')." <u>Id.</u> at 179.[6]  Step four then requires the ALJ to assess

whether, based on that RFC, the claimant can perform past relevant

work; if so, the claimant does not qualify as disabled.  <u>Id.</u> at

---

[5]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

[6]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.,* pain)." <u>Hines</u>, 453 F.3d at 562-63.

179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ did not properly evaluate the opinions of two state agency psychologists and an examining psychologist in determining [Plaintiff's] [RFC]" (Docket Entry 12 at 5 (bold font omitted));

2) "[t]he ALJ erred by failing to account for moderate limitations in concentration, persistence or pace [('CPP')] in his RFC finding" (id. at 10 (bold font omitted)); and

---

[7] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

3) "[s]ubstantial evidence does not support the ALJ's finding that [Plaintiff] can perform medium work in light of [Plaintiff's] severe COPD" (id. at 11 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 9-21.)

## 1. Psychological Opinion Evidence

In Plaintiff's first issue on review, he faults the ALJ for failing to "properly evaluate the opinions of . . . state agency psychologists [Linda O'Neil, Ph.D., and Nancy Y. Herrera, Ph.D.] and . . . [consultative] examining psychologist [J. Craig Hunt, Psy.D.] in determining [Plaintiff's] [RFC]." (Docket Entry 12 at 5 (bold font omitted).) In particular, Plaintiff alleges that "the ALJ's finding that [Plaintiff] can frequently interact with supervisors, coworkers, and the public is not consistent with the opinions of [these] psychological consultants who opined in similar ways that [Plaintiff] was more limited in his ability to interact with others than the ALJ found." (Id. at 6 (referencing Tr. 46, 131, 149, 811.) According to Plaintiff, "[s]ince the ALJ did not explain the apparent contradiction between his RFC finding and the opinions of the three psychological consultants, remand is necessary." (Id.) Plaintiff's arguments have merit.

Under Social Security Administration regulations and rulings, an ALJ must evaluate all medical source opinions, as well as expressly indicate and explain the weight he or she affords to such

opinions.  See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and, where an opinion does not warrant controlling weight, the ALJ must "consider all of the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-6p, Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the [ALJ] and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180, at *1  (July 2, 1996) ("SSR 96-6p") ("Findings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence . . . . [and] [ALJs] . . . may not ignore these opinions and must explain the weight given to these opinions in their decisions." (emphasis added)); Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7  (July 2, 1996) ("SSR 96-8p") ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." (emphasis added)).

As an initial matter, (and as Plaintiff argues (see Docket Entry 12 at 7)), doubt exists as to whether the ALJ expressly weighed the opinions of the state agency <u>psychological</u> consultants. In that regard, the only reference to the state agency psychological consultants in the ALJ's decision appears as follows:

> As for the opinion evidence, the [ALJ] notes that the State agency <u>physicians and psychologists</u> submitted detailed reports, which included examinations of the medical evidence of record. The state <u>physicians</u> determined that [Plaintiff] could perform medium work activity. The [ALJ] finds that <u>these opinions</u> were [sic] consistent with the overall medical record, and accordingly gives <u>these findings</u> great weight.

(Tr. 51 (emphasis added).) Although the ALJ opened the paragraph with a reference to both "the State agency physicians <u>and</u> <u>psychologists</u>" (<u>id.</u> (emphasis added)), the ALJ actually described only the <u>physicians</u>' opinions that Plaintiff "could perform medium work activity" (<u>id.</u>). Thus, logically, the ALJ's subsequent references to "<u>these</u> opinions" and "<u>these</u> findings" (<u>id.</u> (emphasis added)) seem more likely to refer to the physicians' medium work opinions, than to the opinions of the psychologists that the ALJ never specifically discussed.

However, the Court need not resolve that ambiguity in the ALJ's decision. Whether the ALJ failed to expressly weigh the psychological consultants' opinions at all, or accorded them a blanket assessment of "great weight" (<u>id.</u>), the ALJ reversibly erred because, as explained in more detail below, the psychological consultants' opinions conflict both with each other <u>and</u> with the

11

RFC.  See Huffman v. Colvin, No. 1:10CV537, 2013 WL 4431964, at *6
(M.D.N.C. Aug. 14, 2013) (unpublished) (Webster, M.J.) ("In
attributing substantial weight to the findings of State agency
medical consultants, the ALJ may have only intended to adopt the
exertional limitations (i.e., light work) set forth by the
non-examining State agency physicians, because that is the only
limitation the ALJ included in Plaintiff's RFC.  If so, the ALJ
erred by ignoring — that is, by failing to accept, reject, or
address — the findings of Drs. Roque and Perkins, the non-examining
state agency experts who considered Plaintiff's [mental]
limitations.  Alternatively, one might read the ALJ's decision as
attributing substantial weight to the opinions of all non-examining
State agency experts, including Drs. Roque and Perkins.  Under this
interpretation, the ALJ still erred, and in fact erred more
egregiously, because he attributed substantial weight to the
findings of Drs. Roque and Perkins, but then failed to incorporate
those findings in Plaintiff's RFC.  Thus, because the ALJ erred in
either event, the undersigned need not resolve any ambiguity
. . . ."), recommendation adopted, slip op. (M.D.N.C. Sept. 10,
2013) (Osteen, Jr., C.J.).

At the initial stage of administrative review, Dr. O'Neil
opined that Plaintiff had moderate limitation in his ability to
interact with the general public and "some difficulty adapting to
changes in routine."  (Tr. 131.)  However, despite those

limitations, Dr. O'Neil ultimately concluded that Plaintiff "appear[ed] able to interact appr[opriately] with others" and remained "[c]apable of simple, routine tasks." (Id.) Dr. O'Neil did not include any limitations in social interaction or work stress levels in her mental RFC. (See Tr. 130-32.) In comparison, at the reconsideration level, Dr. Herrera found that Plaintiff "would have some social limitations secondary to depression . . .[,] would likely do best in settings with minimal social demands[,] . . . [and] would be able to adapt to routine work demands and stressors within the context of a stable, low-stress work assignment." (Tr. 149 (emphasis added).) Dr. Herrera concluded that Plaintiff "retain[ed] the ability to perform [simple, routine tasks] with noted limits." (Tr. 150 (emphasis added).)

In turn, the ALJ's mental RFC limited Plaintiff "to simple, routine, and repetitive tasks, with frequent, but not continuous, interaction with supervisors, co-workers, and the public." (Tr. 46 (emphasis added).)[8] Thus, even assuming the ALJ intended to give "great weight" to the state agency psychological consultants' opinions (Tr. 51), the mental RFC adopted by the ALJ contains social restrictions not present in Dr. O'Neil's opinions, and lacks

---

[8] "'Frequent' means occurring from one-third to two-thirds of the time . . . for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational rules of Appendix 2, 1983 WL 31251, at *6 (1983).

the greater social restrictions and stress-related restriction in Dr. Herrera's opinions, i.e., the RFC conflicts with <u>both</u> consultants' opinions (<u>compare</u> Tr. 46, <u>with</u> Tr. 131, 149-50). Moreover, the ALJ offered no explanation for the conflicts between the mental RFC and the psychological consultants' opinions. (<u>See</u> Tr. 51.)

A similar problem exists with the ALJ's assessment of consultative examiner Dr. Hunt's opinions. The ALJ evaluated Dr. Hunt's opinions as follows:

> The [ALJ] notes that [Dr. Hunt] submitted a detailed report, which included psychological testing, a clinical interview, and observations. Dr. Hunt opined that [Plaintiff] could perform simple, routine, repetitive tasks and understand, retain, and follow instructions. He noted that [Plaintiff] had adequate to marginal interpersonal behaviors and might have difficulties interacting with others. He stated that [Plaintiff] had adequate to marginal concentration and that he might have moderate or greater difficulties tolerating the stress of day-to-day work activities. <u>The [ALJ] finds that the examination was thorough and consistent with the evidence of record, and has given these findings great weight. The substance of these limitations are included in [Plaintiff's] [RFC].</u>

(Tr. 51 (emphasis added).) Notwithstanding the ALJ's praise of Dr. Hunt's report, the RFC does not, on its face, contain the "substance" of Dr. Hunt's limitations.

Although Dr. Hunt opined that Plaintiff "appear[ed] to have the <u>intellectual</u> capacity to perform simple, routine, repetitive tasks as well as understand, retain, and follow instructions," he also posited that Plaintiff's "<u>[p]sychiatric symptoms</u> may have a

negative impact on" those abilities.  (Tr. 811 (emphasis added).)
Thus, contrary to the ALJ's assessment (see Tr. 51), Dr. Hunt's
statement does not constitute an unqualified opinion that Plaintiff
remained capable of performing simple, routine, and repetitive
tasks.  In addition, Dr. Hunt felt that Plaintiff "demonstrated
adequate to marginal interpersonal behavior and may have difficulty
interacting effectively with peers, coworkers, and supervisors due
to complications from mood and possible entrenched interpersonal
style." (Tr. 811 (emphasis added).)  Absent additional explanation
from the ALJ (not present here), the RFC's allowance of frequent
interaction with co-workers, supervisor, and the general public
(see Tr. 46), i.e., interaction with others for up to six hours in
an eight-hour workday, does not harmonize with Dr. Hunt's opinion
that Plaintiff "demonstrated adequate to marginal interpersonal
behavior" (Tr. 811 (emphasis added)).  Moreover, with regard to
work stress, Dr. Hunt reported that Plaintiff might "have moderate
or greater difficulty tolerating the stress associated with day-to-
day work activity" (id. (emphasis added)), yet the ALJ did not
include any limitations on exposure to work stress in the RFC (see
Tr. 46).  Thus, the ALJ failed to explain the conflicts between the
RFC and Dr. Hunt's opinions.

Defendant first disputes Plaintiff's arguments by asserting
that "substantial evidence in the record supported the ALJ's
conclusion that Plaintiff could frequently interact with the

general public, coworkers, and supervisors" (Docket Entry 14 at 11), as well as citing to medical evidence and Plaintiff's statements tending to show he did not have significant impairment in social functioning (id. (citing Tr. 111-12, 314, 407, 464, 498, 575, 583, 585, 596, 598, 600, 613, 655, 740, 751, 795, 808)). However, Defendant's contention improperly relies on post-hoc rationalization. See Securities & Exch. Comm'n. v. Chenery Corp., 332 U.S. 194, 196 (1947); see also Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." (citing Chenery)).

On judicial review, the Court must determine whether the materials on which the ALJ relied in reaching the determinations at issue provided substantial evidence for those determinations and whether the ALJ correctly applied the law in making those determinations; thus the Court may not piece together evidence, not expressly relied upon by the ALJ, to support the ALJ's findings. See Stefanowicz v. Colvin, No. 3:12-CV-11-J-JRK, 2013 WL 1320421, at *4 (M.D. Fla. Mar. 29, 2013) (unpublished) ("It is not up to a reviewing court to scour the record to find support for an ALJ's decision; rather, the ALJ must support his or her decision within."). As discussed above, the ALJ's analysis of the

16

psychological opinion evidence does not supply substantial evidence to support the mental RFC or follow applicable law, as the ALJ did not explain the conflicts between that evidence and the RFC or otherwise provide a logical bridge between the record evidence and the RFC.

Defendant next contends that "the fact that the ALJ assigned significant weight to the psychologists' opinions did not compel the ALJ to adopt them verbatim or include every one of their proposed limitations in the RFC finding." (Docket Entry 14 at 12 (citing <u>Bacnik v. Colvin</u>, 1:12-CV-801, 2014 WL 3547387, at *4 n.7 (M.D.N.C. Jul. 17, 2014) (unpublished) (Eagles, J.), <u>Wilkinson v. Commissioner of Soc. Sec.</u>, 558 F. App'x 254, 256 (3d Cir. 2014), and <u>Lambert-Newsome v. Astrue</u>, Civ. No. 11-1141-CJP, 2012 WL 2922717, at *6 (S.D. Ill. Jul. 17, 2012) (unpublished)).) Although an ALJ need not, by virtue of crediting a medical source's opinions, incorporate all of those opinions verbatim into the RFC, the ALJ's decision must still make clear to the reviewing court which opinions the ALJ adopted, which opinions he or she rejected, and the reasons therefor. <u>See</u> SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] <u>must</u> explain why the opinion was not adopted." (emphasis added)). Here, the ALJ's decision does not clarify whether he even expressly weighed the opinions of the state agency psychological consultants and, if he did, why he did not adopt the

consultants' mental limitations.  (See Tr. 51.)  Moreover, the ALJ indicated that he incorporated the "substance" of Dr. Hunt's mental limitations into the RFC but, as discussed above, neither included Hunt's limitations on social functioning and stress tolerance in the RFC, nor explained why he rejected them.  (Id.)

Defendant additionally argues that any error by the ALJ in evaluating the psychological opinion evidence "remains harmless under the circumstances of this case."  (Docket Entry 14 at 13-14.) According to Defendant, even if the ALJ had incorporated limitations to occasional interaction with others and a low stress work environment in the RFC, Plaintiff would still have retained the capacity to perform his past relevant work as a janitor, dishwasher, and creeler.  (Id. at 14-15.)  In that regard, Defendant notes that the Dictionary of Occupational Titles ("DOT") listings for each of these jobs reflect "Talking" as "Not Present," and the jobs' DOT numbers "contain[] a fifth digit of '8,' reflecting the lowest possible level of human interaction that exists in the labor force" (id. at 14 (citing DOT, No. 323.687-014 ("Cleaner, Housekeeping"), 1991 WL 672783, DOT, No. 318.687-010 ("Kitchen Helper"), 1991 WL 672755, DOT, No. 689.687-030 ("Creeler"), 1991 WL 678437, and DOT, App'x B ("Explanation of Data, People, and Things"), 1991 WL 688701)), as well as that the jobs "involve, at most, a few concrete variables in or from standardized situations" (id. at 15 (citing DOT, No. 323.687-014,

18

1991 WL 672783, <u>DOT</u>, No. 318.687-010, 1991 WL 672755, and <u>DOT</u>, No. 689.687-030, 1991 WL 678437)). Defendant's arguments fall short.

Even assuming that Plaintiff's past jobs could accommodate a limitation to occasional interaction with others (or Dr. Herrera's restriction to a job with "minimal social demands" (Tr. 149)), Defendant has not shown that those jobs would remain available given the opinions of Drs. Herrera and Hunt regarding Plaintiff's difficulty with tolerating workplace stress (<u>see</u> Tr. 149, 811). Defendant's reliance on the jobs' <u>reasoning</u> development level of two[9] to demonstrate that Plaintiff's prior work would accommodate a restriction to a low stress work setting misses the mark. A job's reasoning development level reflects the degree of analytical ability required by a job, and not the level of stress present in a job. <u>See generally</u> <u>DOT</u>, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development (GED)"), 1991 WL 688702. Because the <u>DOT</u> does not address the degree of stress present in a particular job, the ALJ must rely instead on a VE to testify, based on his or her vocational knowledge, whether a particular job would accommodate a restriction to a low stress setting.[10]

---

[9] A reasoning development level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions . . . [and] [d]eal with problems involving a few concrete variables in or from standardized situations." <u>DOT</u>, No. 689.687-030, 1991 WL 678437 (discussing "Creeler" job demands).

[10] For a similar reason, the ALJ's alternative step five finding, relying on the <u>Medical-Vocational Guidelines</u> rather than a VE, to deem Plaintiff not disabled

(continued...)

In short, because the ALJ failed to explain the conflicts between the RFC and the opinions of Drs. O'Neil, Herrera, and Hunt, Plaintiff's first issue on review warrants remand.

Moreover, Plaintiff has alleged in his second issue on review that the ALJ failed to account in the RFC for Plaintiff's moderate limitation in CPP in violation of <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015). (<u>See</u> Docket Entry 12 at 11-12.) In this case, both state agency psychological consultants opined that, despite moderate limitation in CPP (<u>see</u> Tr. 126, 143), Plaintiff "appear[ed] able to maintain attention and concentration to perform simple, routine, repetitive tasks" (Tr. 131, 149). The United States Court of Appeals for the Fourth Circuit recently held that an ALJ's reliance on similar state agency psychological consultants' opinions provided substantial support for the ALJ's mental RFC and thus "reject[ed] [the plaintiff's] argument that a remand [wa]s required under <u>Mascio</u>." <u>Sizemore v. Berryhill</u>, ___ F. App'x ___, ___, No. 16-1301, 2017 WL 6374237, at *6 (4th Cir. Dec. 1, 2017). However, as discussed above, the ALJ's decision here does not clarify whether the ALJ expressly weighed the opinions of the consultants. (<u>See</u> Tr. 51.) Thus, upon remand, the ALJ should expressly weigh the opinions of the state agency psychological consultants and, if he finds Plaintiff moderately limited in CPP,

---

[10] (...continued)
(<u>see</u> Tr. 52), does not suffice to render harmless the ALJ's errors in evaluating the psychological opinion evidence.

explain how he accounted for such limitation in the RFC or why
Plaintiff's particular CPP limitation did not require additional
restrictions (e.g., because the state agency consultants concluded
that Plaintiff could perform necessary functions for certain types
of work for the periods of time required notwithstanding his
particular CPP limitations).

## 2. COPD

Lastly, Plaintiff maintains that "[s]ubstantial evidence does
not support the ALJ's finding that [Plaintiff] can perform medium
work in light of [Plaintiff's] severe COPD." (Docket Entry 12 at
11 (bold font omitted).) In that regard, Plaintiff challenges the
ALJ's reliance on the opinions of consultative examiners Dr. Peter
Morris and Dr. Amon L. Funderburk that Plaintiff remained capable
of medium work, because the examiners issued their opinions prior
to "March 2013 when [Plaintiff] developed COPD." (Id. at 13
(citing Tr. 51, 379-84, 407-11).) In addition, Plaintiff cites to
record evidence "show[ing] that [Plaintiff's] COPD is, in fact,
moderate to severe" and "not compatible with work requiring an
ability to lift 25 pounds frequently, 50 pounds occasionally, and
stand or walk six hours out of an eight hour workday." (Id. at 15
(citing Tr. 550, 584, 590, 592, 599, 606, 609, 620, 638, 643, 657,
658, 701, 723, 727, 730, 753, 756, 768, 771, 787).) Moreover,
Plaintiff notes that he submitted to the Appeals Council "a
favorable decision on [his] claim for Medicaid benefits . . .

[which] determined that [Plaintiff's] condition was the medical equivalent of [L]isting 3.03 [("Asthma"), 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 3.03]." (Id. at 16 (citing Tr. 814-17).) Plaintiff's contentions fall short.

The ALJ did give "great weight" to the opinions of Drs. Morris and Funderburk, which opinions the ALJ found "equate[d] to the ability to perform medium work activity." (Tr. 51.) As Plaintiff argues (see Docket Entry 12 at 13), both Dr. Morris's opinion (issued on August 11, 2011 (see Tr. 379-84)) and Dr. Funderburk's opinion (issued on January 5, 2013 (see Tr. 407-11)) predated multiple exacerbations of Plaintiff's COPD symptoms beginning in February 2013 and continuing throughout 2013 (see, e.g., Tr. 550, 592, 599, 606, 620).

Nevertheless, the ALJ's reliance on the opinions of Drs. Morris and Funderburk provides no basis for relief. Plaintiff's primary complaints to Dr. Morris involved knee, thigh, and hip pain (see Tr. 379) and to Dr. Funderburk gout, kidney disease, and depression (see Tr. 407). Thus, the doctors' examinations focused on gauging the functional limitations arising from those alleged impairments rather than from COPD. (See Tr. 381-83, 408-10.) Notably, the ALJ discussed both doctors' opinions in the portion of his decision where he discussed Plaintiff's osteoarthritis of the knees and lumbar degenerative disc disease (see Tr. 47-48) and thus

the ALJ did not appear to rely on their opinions to evaluate the functional impact of Plaintiff's COPD.

Further, the ALJ cited to substantial evidence to support his finding that, despite severe COPD, Plaintiff remained capable of performing a limited range of medium work.  The ALJ also gave "great weight" to the opinions of state agency medical consultant Dr. Frank Virgili (Tr. 51), who opined that, despite severe COPD (see Tr. 143), Plaintiff remained capable of performing a limited range of medium work (see Tr. 145-47).  Notably, unlike the opinions of Drs. Morris and Funderburk, Dr. Virgili issued his opinions on July 10, 2013 (see Tr. 147), after Plaintiff had already experienced several COPD exacerbations.

Moreover, the ALJ discussed Plaintiff's testimony regarding his COPD (see Tr. 46-47) but found that testimony "not fully credible concerning the severity of his symptoms and the extent of his limitations," noting that "[t]he objective medical evidence of record support[ed] neither the severity nor the extent of the alleged limitations" (Tr. 50).  Plaintiff does not challenge the ALJ's evaluation of Plaintiff's subjective complaints. (See Docket Entry 12.)

In addition, the ALJ discussed in a fair amount of detail Plaintiff's treatment for COPD spanning from February 2013 to June 2015, including his hospitalizations during exacerbations, his respiratory medications, and his participation in pulmonary

rehabilitation.  (See Tr. 48-49.)  The ALJ concluded that Plaintiff's "exacerbations in 2013 were often due to his cigarette smoking or poor compliance with treatment," and that the "exacerbations resolved quickly with medications." (Tr. 50 (citing Tr. 412-98, 536-69).)  Beyond the conclusory criticism that "[s]ubstantial evidence d[id] not support th[at] finding" (Docket Entry 12 at 13), Plaintiff did not specifically attack the ALJ's observations that Plaintiff's smoking and non-compliance often caused his exacerbations and that medications quickly resolved the exacerbations (see id. at 11-16).  The record also supports the ALJ's observations on these points.  (See Tr. 416 (reflecting that Plaintiff had felt well since his last discharge from hospital until he smoked), 417 (documenting that Plaintiff had breathed better until he rode in a car with smoker), 425 (showing treatment for exacerbation while out of home albuterol and noting "compliance issues"), 466 (reporting that Plaintiff experienced a repeat exacerbation after failing to fill any of his respiratory prescriptions), 571 (recording that Plaintiff's respiratory symptoms improved and stabilized after in-patient steroids and nebulizers), 602 (indicating that Plaintiff continued to smoke one cigarette a week in September 2013), 638 (noting that Plaintiff's dyspnea showed "significant improvement" after emergency medical personnel administered nebulizers).)

Finally, the ALJ noted that "the latest treatment notes show[ed] great improvement." (Tr. 50 (citing Tr. 629-761).)[11] Substantial evidence also supports that finding. (See Tr. 584 (2/3/14 - reflecting that pulmonary rehabilitation made Plaintiff feel better and that he remained abstinent from tobacco), 590 (1/6/14 - showing that Plaintiff reported "doing good" and that he did not even think about cigarettes), 576-77 (3/11/14 - documenting no shortness of breath and that Plaintiff continued to abstain from smoking), 708 (9/17/14 - reporting no shortness of breath and describing Plaintiff's COPD as "stable"), 713 (10/28/14 - noting that Plaintiff only used his inhaler "every now and then"), 737 (3/3/15 - describing Plaintiff's breathing as "pretty good" and indicating that Plaintiff hardly needed his albuterol anymore), 764 (5/22/15 - recording that Plaintiff denied shortness of breath and only used his albuterol as needed but not on a daily basis).)

In sum, the ALJ supported the RFC finding that Plaintiff remained able to perform a limited range of medium work with substantial evidence and Plaintiff's instant challenge thus lacks merit.

---

[11] The ALJ's citation to Exhibit 14F to support his finding that more recent treatment notes showed that Plaintiff's COPD had improved likely constitutes a typographical error. (See Tr. 50.) Exhibit 14F contains the RFC assessment of Dr. Melanie Martin (see Tr. 758-61), to which the ALJ afforded "no weight" (Tr. 51). The ALJ probably intended to cite to Exhibit 15F, which contains the most recent treatment notes of record from Wake Forest Baptist Health (see Tr. 762-806).

### III.  CONCLUSION

Plaintiff has established an error warranting remand regarding the mental aspects of his RFC.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to properly address the psychological opinion evidence, adopt an RFC logically supported by that evidence, and to assess Plaintiff's capacity for past relevant work or other available work.  As a result, Plaintiff's Motion for Judgment (Docket Entry 11) should be granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

December 19, 2017